OPINION
{¶ 1} This appeal arises from the Portage County Court of Common Pleas wherein, appellant, Brian R. Hearns, appeals his conviction of one count of sexual battery. On September 9, 2000, Tanya Harcom, Tara Woodson, and Michelle Hearns attended a Streetsboro High School football game. At approximately 10:00 p.m., the three girls left the game and returned to Michelle's home. Present at Michelle's home were her parents; her brother Kevin and his wife; her brother, appellant, and his fiancee; her sister Katie and her husband; and Michelle's boyfriend, Mike. Everyone was inside the home, but a short while later, the three girls, appellant, and Michelle's boyfriend proceeded to the backyard where a bonfire was started. The group sat around the fire talking and drinking alcohol.
 {¶ 2} While the group sat near the fire, Tanya laid her head in appellant's lap, looking up at him. A short while later, the two went into the woods to gather wood for the fire. They returned and sat around the fire again. At approximately 3:00 a.m., Tanya and appellant walked back toward the house. Tanya sat on the step outside the door because she was not feeling well. Appellant sat with her. At this point there is differing testimony regarding certain events. Tanya testified that as she was sitting on the step with appellant she felt as though she was going to pass out and awoke to a sharp pain as appellant inserted his finger into her vagina. He also began fondling her breasts. Appellant denied this activity and claimed that Tanya rested awhile, then he helped her into the house.
 {¶ 3} The two entered the house in a loud fashion, with Tanya falling on the floor and causing the door to hit the wall behind it. Appellant's brother, Kevin, was in the kitchen making a sandwich. He admonished the two for being loud and disruptive, and informed them that others were sleeping. Tanya went to the bathroom, and appellant talked with Kevin. Tanya emerged from the bathroom, and appellant walked with her to a fireplace room in the rear of the house. Tanya stumbled down the step into the room, and appellant attempted to assist her. Kevin again reminded the pair that they were being too loud.
 {¶ 4} Appellant asserts that at this point the two began kissing and then agreed to move closer to the fireplace to avoid being detected by Kevin. He testified that the two continued kissing and then both removed their pants and engaged in intercourse.
 {¶ 5} Tanya testified that she remembered appellant saying, "[d]on't you remember you asked me if I wanted to bone you?" He then grabbed her wrists and pulled her over to the fireplace behind some chairs. Tanya then testified that she fell asleep or passed out and awoke to appellant inserting his penis in her vagina, while her pants were pulled down to her knees. She recalled someone entered the room, causing appellant to jump off her and leave the room.
 {¶ 6} Tanya subsequently rejoined Michelle and Tara in Michelle's room. The girls talked awhile and then Tanya informed them that appellant had sexually assaulted her. Michelle and Tara immediately confronted appellant, who denied any sexual activity occurred. The two went back upstairs to find Tanya sleeping.
 {¶ 7} The following day, Tanya went to work at a local store and informed a coworker that she had been raped. Her grandparents, who had been shopping in the store, took her home. She was subsequently taken to the police station and then to Akron Children's Hospital, where an examination was performed by Dr. Steiner. Dr. Steiner's examination revealed a submucosal hemorrhage of the vaginal cavity, consistent with sexual contact. However, Dr. Steiner acknowledged that it, in itself, is not clear evidence of force. DNA testing of Tanya's underwear revealed the presence of appellant's semen.
 {¶ 8} On August 31, 2001, appellant was indicted on two counts of rape, two counts of gross sexual imposition, and two counts of sexual battery. He entered a plea of not guilty, and the matter proceeded to a jury trial on February 13, 2002. At the close of the state's evidence, the trial court granted appellant's Crim.R. 29 motion on one count of rape and on one count of gross sexual imposition, both relating to the digital penetration allegations. On February 19, 2002, the jury found appellant guilty of one count of sexual battery, regarding the vaginal penetration, and not guilty on the rest of the counts.
 {¶ 9} The court ordered a presentence investigation, including a psychological evaluation. On April 25, 2002, a sentencing hearing was conducted, at which time the trial court sentenced appellant to three years imprisonment, to be served consecutively to a sentence appellant was serving for a separate felonious assault conviction.
 {¶ 10} Appellant filed this subsequent appeal, citing five assignments of error. Appellant's first assignment of error is:
 {¶ 11} "The defendant-appellant was denied his right to due process of law under Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution by the prosecutor's improper comments during the course of the trial."
 {¶ 12} In his first assignment of error, appellant contends that, during closing argument, the prosecution made improper remarks and misstated the evidence, depriving appellant of his due process rights. Specifically, appellant asserts that the prosecution misstated the testimony of Dr. Steiner and of Kevin Hearns, appellant's brother.
 {¶ 13} In order to properly preserve an error for appeal, the record must reveal that trial counsel objected to the error at trial.[1] When such an objection is not made, a reviewing court is limited to a plain error analysis.[2]
 {¶ 14} In the instant case, the record reveals that trial counsel failed to object to the prosecution's comments during closing. Thus, we will apply a plain error analysis of appellant's alleged error. The plain error standard contains three concepts. First, there must be an error, or deviation from a legal rule.[3] Secondly, that error must be plain, defined as "an `obvious' defect in the trial proceedings."[4] Lastly, the error must have affected a "substantial right," meaning the error must have affected the ultimate outcome of the trial.[5] An error satisfying these three prongs may be corrected if the appellate court finds that a correction is needed to "`prevent a manifest miscarriage of justice.'"[6]
 {¶ 15} Counsel is generally given latitude during closing arguments to state what the evidence has shown and what inferences can be made by the jury.[7] When analyzing prosecutorial misconduct during closing arguments, we must determine whether the remarks were improper and whether the remarks affected appellant's substantial rights.[8] The Eighth Appellate District has noted that several factors should be considered in determining whether the prosecution's statements affected a substantial right.[9] These factors include: (1) the nature of the remarks; (2) whether an objection was made by defense counsel; (3) whether the court gave any corrective instructions; and (4) the strength of the evidence presented against the defendant.[10]
 {¶ 16} In the instant case, appellant objects to the following remarks made by the prosecution regarding the testimony of Dr. Steiner:
 {¶ 17} "The second incident took place shortly thereafter. This time they came into the fireplace room. She collapsed there. And he dragged her over to the fireplace and there he had vaginal intercourse with her. Her testimony was completely collaborated [sic] by Dr. Steiner's observations."
 {¶ 18} Appellant argues that this characterization of Dr. Steiner's observation is completely inaccurate. Specifically, appellant argues that Dr. Steiner testified that there was no indication of physical trauma anywhere on Tanya's body to demonstrate force. Thus, Dr. Steiner's testimony did not support Tanya's testimony that she was "dragged" to the fireplace. Dr. Steiner concluded that force could be inferred when the physical findings are considered in light of Tanya's description of the events which occurred.
 {¶ 19} Appellant also objects to the following statement made during closing:
 {¶ 20} "Look at the other charge. Gross sexual imposition. This is sexual contact, the touching of an erogenous zone without privilege of someone, not your spouse, by a force. * * * But this force is any force required for an event. This can be the pushing of clothing, the removing of her jeans, the removal of her underwear and certainly includes the dragging of her over to the fireplace. And, of course, we know that there was force used because the doctor testified that there was this subcontusional [sic] bruising underneath her hymen. * * * The Defendant admitted that he had this sexual conduct with her. And we know there was force use. [sic] Again, Dr. Steiner's testimony, again from Tanya's testimony."
 {¶ 21} Appellant argues that these statements completely mischaracterized Dr. Steiner's testimony, confusing the jury. We disagree. We find these statements to be a permissible attempt by the state to allow the jury to make inferences from the testimony of both Dr. Steiner and Tanya.
 {¶ 22} Appellant also objects to the following statement made by the prosecution during closing argument regarding Kevin Hearn's testimony:
 {¶ 23} "Kevin testified, his brother, he was asked if he cared about the DNA evidence. From the witness stand he said he didn't care. He was in here to do his family's business. He was here to try to protect his family and it didn't matter to him what evidence was out there. He was going to say his peace [sic] to try to protect his brother."
 {¶ 24} Appellant contends that this statement was the completely contradictory to Kevin Hearn's testimony. A review of the record, however, reveals that when asked about the DNA evidence, Kevin responded that he did not know about it and it did not matter to him. The prosecution maintains wide latitude in stating what the evidence has shown, and we find that to be what occurred here. Thus, we conclude that the statements made by the prosecution during closing argument do not rise to the level of misconduct using the plain error standard. Appellant's first assignment of error is without merit.
 {¶ 25} Appellant's second assignment of error is:
 {¶ 26} "The trial court erred to the prejudice of the defendant-appellant when it overruled his motion for acquittal made pursuant to Crim.R. 29 of the Ohio Rules of Criminal Procedure."
 {¶ 27} In his second assignment of error, appellant contends that there was not sufficient evidence presented to sustain the sexual battery conviction. Specifically, appellant alleges the state failed to prove that Tanya was substantially impaired at the time the incident occurred.
 {¶ 28} Appellant moved for a Crim.R. 29(A) motion for acquittal at the close of the state's evidence and renewed the motion at the end of the defense's case. The trial court granted the motion in part, as it pertained to one rape count and one gross sexual imposition count, both involving digital penetration, and denied it in part, regarding each of the remaining counts on the indictment.
 {¶ 29} When determining sufficiency of the evidence, we must consider whether after viewing the probative evidence in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt.[11]
 {¶ 30} Sexual battery, codified as R.C. 2907.03 reads, in part:
 {¶ 31} "No person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired."
 {¶ 32} Thus, in order to find appellant guilty of sexual battery, the jury was required to find that the state had proven, beyond a reasonable doubt, that appellant acted knowingly. A person acts knowingly "when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."[12]
 {¶ 33} In the instant case, testimony was elicited from several witnesses regarding whether Tanya was intoxicated and, thus, substantially impaired, on the evening of the incident. Tanya, her friend Tara, appellant and appellant's brother, Kevin, all testified that Tanya was visibly intoxicated, had trouble keeping her balance, and had fallen more than once. Tanya testified that she and Michelle had consumed at least two vodka and Pepsi drinks that night. Appellant testified that they were both drunk and he had helped her walk toward the house from the bonfire, as she was having difficulty keeping her balance. Appellant's brother, Kevin, testified that he noticed Tanya was intoxicated as she stumbled into the house and fell down the step leading into the fireplace room.
 {¶ 34} Thus, we find the state presented sufficient evidence to allow the jury to find, beyond a reasonable doubt, that Tanya was substantially impaired and that appellant knowingly committed sexual battery. Appellant's second assignment of error is without merit.
 {¶ 35} Appellant's third assignment of error is:
 {¶ 36} "The jury erred to the prejudice of the defendant-appellant when it convicted him of sexual battery and the conviction is against the manifest weight of the evidence."
 {¶ 37} In his third assignment of error, appellant contends that the sexual battery conviction was against the manifest weight of the evidence. Specifically, appellant again alleges that the state failed to prove beyond a reasonable doubt that Tanya was substantially impaired at the time of the incident.
 {¶ 38} This court has held that:
 {¶ 39} "`Manifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 40} "`In determining whether the verdict was against the manifest weight of the evidence, "* * * the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."'"[13]
 {¶ 41} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "`only in the exceptional case in which the evidence weighs heavily against the conviction.'"[14]
 {¶ 42} As noted previously, testimony was elicited from four witnesses, both on direct and cross-examination, that Tanya had consumed alcohol on the evening in question and that she was intoxicated to the point that she had trouble keeping her balance and fell on more than one occasion. In Ohio, it is well-settled that the trier of fact has the discretion to determine the credibility of witnesses and the weight to be given to their testimony.[15] In the instant case, the jury must have found the testimony regarding Tanya's impairment to be credible. Hence, we conclude after reviewing the record and weighing the evidence and all reasonable inferences, that the findings of the jury were supported by competent, credible evidence. Likewise, after an examination of the entire record, it is our view that there was no manifest miscarriage of justice requiring the conviction to be reversed. The sexual battery conviction was not against the manifest weight of the evidence. Appellant's third assignment of error lacks merit.
 {¶ 43} Appellant's fourth assignment of error is:
 {¶ 44} "The trial court erred to the prejudice of the defendant-appellant when it sentenced defendant-appellant to a definite sentence of three (3) years in the current case to be served consecutively with a previously announced two (2) year sentence of incarceration and failed to review all of the statutory factors announced in R.C. 2929.12."
 {¶ 45} An appellate court reviews a felony sentence de novo.[16] The defendant's sentence will not be disturbed on appeal unless this court finds, "by clear and convincing evidence, that the record does not support the sentence or that the sentence is otherwise contrary to law. * * * Clear and convincing evidence is that evidence which will produce in the mind of the trier of fact a firm belief or conviction regarding the facts sought to be established."[17]
 {¶ 46} Appellant argues that the trial court did not consider the factors set forth in R.C. 2929.12, mitigating appellant's conduct. In particular, appellant submits that, at the time the incident occurred, both he and the victim voluntarily consumed alcohol and both parties were flirting with each other. Appellant also contends that the court did not consider appellant's psychological issues as brought forth by his mother during sentencing.
 {¶ 47} When imposing consecutive sentences, the trial court must make the findings contained in R.C. 2929.14(E)(4) on the record.[18] In doing so, the trial court must first determine that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]"[19] The trial court must then find that one of the following factors "listed in R.C. 2929.14(E)(4) is also present: (a) that the offender was awaiting trial or sentencing, or was under community control sanctions [when he committed one or more of the offenses]; (b) that the harm caused by the offenses was so great that a single prison term would not adequately reflect the severity of the conduct; or (c) that the offender's prior criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime."[20]
 {¶ 48} The trial court must also follow the requirements set forth in R.C. 2929.19(B) when sentencing an offender to consecutive sentences under R.C. 2929.14(E)(4).[21]
Specifically, R.C. 2929.19(B)(2)(c) requires that the trial court justify its imposition of consecutive sentences by making findings that give the court's reasons for selecting that particular sentence.
 {¶ 49} During the sentencing hearing, the trial court made the following statement:
 {¶ 50} "Mr. Hearns, this crime was committed while you were out on bond on another felonious assault charge. Since then I believe you have been convicted and sent to prison as a result of that felonious assault, and you were previously convicted of an assault. So this is really your third crime here in a very short period of time."
 {¶ 51} The court also noted that it was not the worst form of the offense and the maximum sentence was not appropriate. The court went further to say that the "serious trauma placed on the victim" required more than the minimum sentence. The written judgment entry states, "[t]he Court has considered the record, oral statements, any victim impact statement and presentence report prepared, as well as the principles and purposes of sentencing under Ohio Revised Code Section 2929.11, and has balanced the seriousness and recidivism factors under Ohio Revised Code Section 2929.12."
 {¶ 52} The sentencing entry also contains the following language, "[t]he Court further finds, to adequately punish the offender and because of Defendant's criminal history, consecutive terms are necessary to protect the public."
 {¶ 53} Therefore, based on the foregoing, it is clear that the trial court considered R.C. 2929.12 and 2929.14(E)(4) before imposing sentence. Furthermore, the record clearly supports the court's findings. Appellant's fourth assignment of error is without merit.
 {¶ 54} Appellant's fifth assignment of error is:
 {¶ 55} "The trial court erred to the prejudice of the defendant-appellant when it failed to allow defense counsel and defendant-appellant to review and comment on the presentence investigation report as mandated by R.C. 2951.03 prior to sentencing defendant-appellant."
 {¶ 56} R.C. 2951.03, governing presentence investigation reports, reads:
 {¶ 57} "(B)(1) If a presentence investigation report is prepared pursuant to this section, section 2947.06 of the Revised Code, or Criminal Rule 32.2, the court, at a reasonable time before imposing sentence, shall permit the defendant or the defendant's counsel to read the report, except that the court shall not permit the defendant or the defendant's counsel to read any of the following:
 {¶ 58} "(a) Any recommendation as to sentence;
 {¶ 59} "(b) Any diagnostic opinions that, if disclosed, the court believes might seriously disrupt a program of rehabilitation for the defendant;
 {¶ 60} "(c) Any sources of information obtained upon a promise of confidentiality;
 {¶ 61} "(d) Any other information that, if disclosed, the court believes might result in physical harm or some other type of harm to the defendant or to any other person."
 {¶ 62} In addition, R.C. 2951.03(B)(2) states that, "[p]rior to sentencing, the court shall permit the defendant and the defendant's counsel to comment on the presentence investigation report[.]"
 {¶ 63} In the instant case, appellant asserts as his fifth assignment of error that the trial court did not permit him or his counsel to review or comment on the presentence investigation report. However, as appellee notes, a review of the sentencing hearing transcript reveals the following statement by defense counsel after the trial court asked if there was anything further:
 {¶ 64} "Judge, I have, and you have seen the pre-sentence investigation, I have advised Mr. Hearns not to give a written statement, and I did that Your Honor, because he has rights to an appeal that this Court is certainly aware of, and I am sure you are going to talk to him about those things."
 {¶ 65} Thus, the record clearly reveals that defense counsel was given the opportunity to review the presentence investigation report in accordance with R.C. 2951.03. Appellant's fifth assignment of error is without merit.
 {¶ 66} Based on the foregoing, the judgment of the trial court is affirmed.
Judgment affirmed.
Ford, P.J. and Rice, J., concur.
[1] (Citation omitted.) State v. Blackburn, 11th Dist. No. 2001-T-0052, 2003-Ohio-605, at ¶ 13.
[2] Id.
[3] State v. Barnes (2002), 94 Ohio St.3d 21, 27.
[4] Id.
[5] Id.
[6] (Citations omitted.) State v. Long (1978),53 Ohio St.2d 91, 95, fn. 5.
[7] State v. Davis (1996), 76 Ohio St.3d 107, 117.
[8] Id.
[9] State v. Braxton (1995), 102 Ohio App.3d 28, 41.
[10] Id.
[11] State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *14.
[12] R.C. 2901.22(B).
[13] (Emphasis in original.) (Citations omitted.) Schlee, at *14-15.
[14] (Citation omitted.) State v. Thompkins (1997),78 Ohio St.3d 380, 387.
[15] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[16] State v. Perry, 11th Dist. No. 2000-L-166, 2002-Ohio-1468, 2002 Ohio App. LEXIS 1496, at *4.
[17] (Citations omitted.) Id.
[18] State v. Norwood (June 8, 2001), 11th Dist. No. 2000-L-072, 2001 WL 635951, at *4.
[19] R.C. 2929.14(E)(4).
[20] Norwood, at *4.
[21] State v. Hoskins (Mar. 16, 2001), 11th Dist. No. 2000-A-0037, 2001 WL 276935, at *3.