OPINION
{¶ 1} Appellant, Dana Albanese, appeals from the May 20, 2005 judgment entry of the Portage County Municipal Court, Ravenna Division, in which she was sentenced for speeding and driving under the influence of alcohol ("DUI").
 {¶ 2} On June 24, 2003, a complaint was filed against appellant charging her with one count of speeding, a minor misdemeanor, in violation of R.C. 4511.21(C), and one count of DUI, a misdemeanor of the first degree, in violation of R.C.4511.19(A)(1). On June 24, 2003, appellant entered a plea of not guilty at her initial appearance.
 {¶ 3} On December 15, 2003, appellant filed a motion to suppress.[1] A suppression hearing was held on May 24, 2004.
 {¶ 4} At that hearing, Officer Jason Sackett ("Officer Sackett"), with the Streetsboro City Police Department, was the sole witness to testify. He testified for appellee, the state of Ohio, that he was on duty on June 24, 2003, and came in contact with appellant shortly after 3:00 a.m. Officer Sackett was traveling in his marked cruiser, and observed appellant driving eastbound on State Route 14 in Streetsboro, Portage County, Ohio. He visually estimated that her vehicle was traveling in excess of the speed limit, which was confirmed by radar. Appellant was clocked at fifty-five m.p.h., fifteen miles over the posted forty m.p.h. speed limit. At that time, he initiated a traffic stop of appellant's vehicle.
 {¶ 5} Upon approaching appellant's car, Officer Sackett noticed a strong odor of alcohol, and indicated that appellant's eyes were glassy and bloodshot. Appellant's speech appeared to be normal. He asked appellant whether she had consumed any alcoholic beverages. Officer Sackett indicated that appellant replied that she had a couple of drinks. He ordered appellant out of her vehicle, and administered three field sobriety tests, including the Horizontal Gaze Nystagmus ("HGN"), the one-legged stand, and the walk and turn. Officer Sackett testified that appellant failed all three tests. He then arrested appellant for DUI, and transported her to the station. At the station, she declined B.A.C. testing and signed Form 2255.
 {¶ 6} Pursuant to its May 24, 2004 judgment entry, the trial court denied appellant's motion to suppress, concluding that reasonable cause existed for the stop, and probable cause existed for appellant's arrest.
 {¶ 7} On September 7, 2004, appellant filed a demand for trial by jury pursuant to Crim.R. 23. A jury trial commenced on May 5, 2005.
 {¶ 8} At the trial, Officer Sackett testified for appellee to the same sequence of events as he did at the hearing on appellant's motion to suppress. In addition, Officer Sackett indicated that the traffic stop was not recorded on video, since at that time, the cruisers were not equipped with cameras. He established the standardized manner of conducting field sobriety tests as required by the National Highway Traffic Safety Administration ("NHTSA"), and maintained that he administered the tests in substantial compliance with the testing standards.[2]
 {¶ 9} On cross-examination, Officer Sackett stated that he fills out police reports generally a couple hours after an arrest. He said that the only reason that he stopped appellant's vehicle was due to her speeding. Officer Sackett testified that appellant was slightly off-balance when she exited her car. Officer Sackett was asked by defense counsel whether he had ever seen appellant before, and he replied that he had.[3] He indicated that when grading the field sobriety tests, they are based on the NHTSA training. According to Officer Sackett, the booking room at the station contains a video camera. He stated that a tape should have been in evidence if the camera was functioning. Officer Sackett did not have the booking photographs of appellant at the trial.
 {¶ 10} On re-direct examination, Officer Sackett testified that he had come in contact with appellant about three months prior to the incident at issue on a routine traffic stop, but indicated that no citation was issued.
 {¶ 11} At the end of appellee's case, appellant's counsel moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court.
 {¶ 12} According to appellant, when asked by Officer Sackett during the stop whether she had consumed any alcohol, she replied that she had two glasses of wine. Appellant testified that Officer Sackett's demeanor was aggressive and intimidating. With respect to the field sobriety tests, appellant stated that Officer Sackett never informed her that there were points given or that she was being graded. Appellant said that she had back problems. At the station, she refused the breathalyzer test and requested an attorney.
 {¶ 13} On cross-examination, appellant admitted that she was traveling in excess of the posted speed limit. She said that she would have followed Officer Sackett's instructions whether he had told her it was a "test" or not. Appellant never volunteered to Officer Sackett that she had back problems.
 {¶ 14} At the close of the defense's case, appellant's counsel renewed the Crim.R. 29 motion, which was overruled by the trial court.
 {¶ 15} Following the jury trial, on May 6, 2005, the jury found appellant guilty of DUI. In addition, appellant was found guilty of speeding by the trial court.
 {¶ 16} Pursuant to its May 20, 2005 judgment entry the trial court sentenced appellant to one hundred eighty days in jail, with one hundred seventy days conditionally suspended; ordered her to pay a $350 fine; and suspended her driver's license for two years. Appellant's sentence was stayed pending appeal. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:[4]
 {¶ 17} "[1.] The trial court committed error and abused its discretion to the prejudice of [appellant] due to the misconduct of the prosecuting attorney that prejudicially affected the substantial rights of [appellant] to receive a fair trial.
 {¶ 18} "[2.] [Appellant] was denied a fair and impartial trial as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution where the trial court erred in violating [appellant's] right to cross examination.
 {¶ 19} "[3.] The trial court erred allowing the admission of irrelevant evidence, and as a result of this abuse, appellant was denied her right to a fair trial and the court in its action showed support or bias toward the prosecution.
 {¶ 20} "[4.] [Appellant] was denied a fair trial because of the cumulative prejudicial errors that occurred at trial."
 {¶ 21} In her first assignment of error, appellant argues that the trial court erred in denying her motion for a mistrial due to the misconduct of the prosecutor which prejudicially affected her substantial rights to receive a fair trial.[5]
Specifically, appellant contends that the prosecutor made improper statements during closing argument; referenced previously excluded evidence; failed to disclose potentially exculpatory evidence to the defense; and concealed prior contact between Officer Sackett and appellant.
 {¶ 22} The granting or denying of a mistrial under Crim.R. 33 rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v.Williams (1975), 43 Ohio St.2d 88, paragraph two of the syllabus. An abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams
(1980), 62 Ohio St.2d 151, 157.
 {¶ 23} This court stated in State v. Johnson (Sept. 24, 1999), 11th Dist. No. 97-T0-227, 1999 Ohio App. LEXIS 4469, at 12-14:
 {¶ 24} "[t]he Supreme Court of Ohio has made the following observation regarding mistrials:
 {¶ 25} "`[i]n evaluating whether the declaration of a mistrial was proper in a particular case, this court has declined to apply inflexible standards, due to the infinite variety of circumstances in which a mistrial may arise. (* * *) This court has instead adopted an approach which grants great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial.' (Citations omitted.) State v. Glover (1988),35 Ohio St.3d 18, 19 * * *.
 {¶ 26} "Thus, the decision whether to grant or deny a mistrial under Crim.R. 33 rests within the sound discretion of the trial court. Id.; State v. Sage (1987), 31 Ohio St.3d 173,182 * * *; State v. Widner (1981), 68 Ohio St.2d 188, 190
* * *; State v. Patterson (May 22, 1998), 11th Dist. No. 96-T-5439, 1998 Ohio App. LEXIS 2289, at 19 * * *. Mistrials should only be declared when the ends of justice so require and a fair trial is no longer possible. State v.Franklin (1991), 62 Ohio St.3d 118, 127 * * *;Patterson, [supra], at 6." (Parallel citations omitted.)
 {¶ 27} With respect to prosecutorial misconduct, the Supreme Court in State v. Slagle (1992), 65 Ohio St.3d 597, 607, stated: "[w]hen we review a prosecutor's closing argument we ask two questions: `whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.' State v. Smith (1984), 14 Ohio St.3d 13, 14 * * *. The closing argument is considered in its entirety to determine whether it was prejudicial. State v. Moritz (1980),63 Ohio St.2d 150, 157 * * *." (Parallel citations omitted.)
 {¶ 28} "Counsel is generally given latitude during closing arguments to state what the evidence has shown and what inferences can be made by the jury." State v. Hearns, 11th Dist. No. 2002-P-0050, 2004-Ohio-385, at ¶ 15, citing State v.Davis (1996), 76 Ohio St.3d 107, 117. In determining whether the prosecutor's statements affected a substantial right of the defendant, an appellate court should consider the following factors: "(1) the nature of the remarks; (2) whether an objection was made by defense counsel; (3) whether the court gave any corrective instructions; and (4) the strength of the evidence presented against the defendant." Hearns, supra, at ¶ 15, citing State v. Braxton (1995), 102 Ohio App.3d 28, 41.
 {¶ 29} In the case at bar, we do not agree with appellant that the trial court erred and abused its discretion in denying her motion for a mistrial based on alleged misconduct by the prosecution.
 {¶ 30} First, appellant contends that the trial court erred in denying a mistrial based on the prosecutor's reference to "divided attention skills tests" during closing argument. Specifically, the prosecutor stated: "[now], the fact that they aren't called tests and they don't sit there and say, `O.K. You got a C on that one, a D on that one.' There's a reason for it. If people think they're being tested on something they start getting more agitated. They start being a little more leery. These are referred to as divided attention skills tests. They're testing more than one thing at a time." Appellant's counsel objected. The trial court sustained the objection based on the fact that Officer Sackett did not testify using the particular words, "divided attention skills tests." The prosecutor continued his closing, referencing the substance of Officer Sackett's testimony, but without using the phrase, "divided attention skills tests." The trial court instructed the jury that opening statements and closing arguments of counsel are not evidence, but rather are only designed to assist. Appellant's counsel ultimately moved for a mistrial. The trial court properly overruled appellant's motion, stating: "* * * I gave the jury an instruction that there had been no testimony regarding divided attention skills, and that they were to disregard that statement by the prosecutor."
 {¶ 31} We note that the prosecutor's remark actually addressed inferences from appellant's own testimony on direct examination at trial.
 {¶ 32} "Q After [the HGN] exercise did you know that it was a test?
 {¶ 33} "A No. I didn't know that there were points there or anything like that.
 {¶ 34} "Q And he never told you that you were being graded, and if you failed this test that you would be arrested for driving under the influence?
 {¶ 35} "A No, he didn't."
 {¶ 36} Again, the foregoing was brought up by appellant's counsel. The fact that the prosecutor later made reference to "divided attention skills tests" does not lead us to conclude that the trial court abused its discretion in denying appellant's motion for mistrial.
 {¶ 37} Second, appellant argues that the prosecutor referenced previously excluded evidence. Appellant contends that a mistrial should have been granted when the prosecutor referenced the NHTSA manual during the direct examination of Officer Sackett. We note that the trial court limited the admissibility of the NHTSA manual itself, unless an expert was produced.
 {¶ 38} At trial, the court stated:
 {¶ 39} "[t]he actual manual I said could not be admitted because it is a document and * * * there's nobody here to identify it as having put it together.
 {¶ 40} "The officer is permitted to testify as to what he observed based on what he was taught in the certain course. And that — that has been permitted ever since I can remember."
 {¶ 41} The transcript reveals that both appellee as well as appellant made references to the NHTSA standards and manual. Again, Officer Sackett testified for appellee. On direct examination, he referenced his basic duties as a patrolman, the training he received, and indicated that he was a certified peace officer in the state of Ohio. Officer Sackett stated that he uses the standards in the NHTSA manual when he performs field sobriety tests. He explained the three field sobriety tests, including the HGN, the one-legged stand, and the walk and turn. The prosecutor asked Officer Sackett what four or more clues represent in the HGN test, and he replied "a 77 percent chance that the person will blow over a point one." There was no objection made by the defense. With respect to the one-legged stand, the prosecutor asked Officer Sackett what two or more clues indicated, and he responded that "[t]here's a 65 percent chance that the defendant will blow over a point one." Defense counsel objected, and the trial court overruled the objection. Regarding the walk and turn, the prosecutor asked Officer Sackett what standards were used to perform that test. He replied that the NHTSA standards were used. There was no objection made by defense counsel. We do not believe that Officer Sackett testified as an expert with respect to the NHTSA manual. Rather, he testified as to what he observed based on his training.
 {¶ 42} The trial transcript also reveals numerous references to the NHTSA standards and manual made by appellant. Specifically, defense counsel asked Officer Sackett twice on cross-examination if his grading of the field sobriety tests was based on the NHTSA manual and training. Appellant's counsel asked Officer Sackett if the NHTSA manual indicates whether contact lenses can limit lateral eye movement. Defense counsel inquired whether it was accurate that the NHTSA standards indicate a certain gap allowance in walking in the heel-to-toe test. In addition, defense counsel made references to the NHTSA standards and manual in his closing argument.
 {¶ 43} After thoroughly reviewing the trial transcript, this court does not see any improper remarks by the prosecutor which would have denied appellant a fair trial.
 {¶ 44} Third, appellant alleges that appellee failed to disclose potentially exculpatory evidence to the defense. Specifically, appellant contends that the absence of the booking videotape and/or the booking photograph denied her the right to a fair trial. We disagree.
 {¶ 45} "Exculpatory evidence" is defined as evidence favorable to the accused, which "if disclosed and used effectively, * * * may make the difference between conviction and acquittal." U.S. v. Bagley (1985), 473 U.S. 667, 676.
 {¶ 46} Failure to disclose exculpatory evidence, when discovered during trial, is governed by Crim.R. 16 rather thanBrady v. Maryland (1963), 373 U.S. 83. State v. Wickline
(1990), 50 Ohio St.3d 114, 116, citing United States v. Agurs
(1976), 427 U.S. 97, 103. Brady involves the discovery of information after trial which had been known to the prosecution but unknown to the defense. Id.
 {¶ 47} The Supreme Court of Ohio in State v. Joseph (1995),73 Ohio St.3d 450, 458, stated: "[p]rosecutorial violations of Crim.R. 16 are reversible only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect. State v. Parson
(1983), 6 Ohio St.3d 442, 445 * * *." (Parallel citation omitted.)
 {¶ 48} In the instant matter, the record shows that the alleged exculpatory material was presented during trial. In fact, a review of the trial transcript reveals that appellant's counsel first referenced the station videotape and the booking photograph during his cross-examination of Officer Sackett. As such, defense counsel had actual knowledge of the items at issue. Thus, the element of surprise is totally absent. As such, there exists no Brady violation requiring a new trial. Wickline,
supra, at 116.
 {¶ 49} Although appellant specifically requested copies of the videotape and photograph in her July 3, 2003 demand for discovery, she fails to show that the evidence at issue would have made the difference between conviction and acquittal. Appellant's glassy and bloodshot eyes and her motor skills were brought to the attention of the jury through Officer Sackett's testimony, who witnessed appellant when she was stopped. In addition, appellant's counsel failed to request a continuance regarding the videotape and photograph. Based on the facts presented, we do not believe that appellant suffered prejudice.
 {¶ 50} Lastly, appellant stresses that the trial court should have declared a mistrial due to appellee's alleged failure to disclose prior contact between Officer Sackett and appellant. However, appellant brought up the subject on cross-examination, which shows her knowledge. Thus, there was no element of surprise. Again, on cross-examination, appellant's counsel asked Officer Sackett if he had ever seen appellant previously, to which he replied that he had. After that brief question, defense counsel continued with his cross-examination. On re-direct examination, the prosecutor asked Officer Sackett if he had in fact ever seen appellant before, to which he responded in the affirmative. Defense counsel objected. Following sidebar, the trial court ultimately sustained the objection, limiting questioning to the fact of the prior contact, not the underlying circumstances or prior acts of appellant. There is no evidence that the prosecutor willfully withheld the fact that Officer Sackett and appellant had prior contact with each other. This issue will be addressed more specifically under appellant's third assignment of error.
 {¶ 51} Appellant's first assignment of error is without merit.
 {¶ 52} In her second assignment of error, appellant maintains that she was denied a fair and impartial trial because the trial court erred in violating her right to cross-examination. Appellant stresses that the trial court improperly limited the scope of cross-examination of Officer Sackett by allowing the prosecutor to disrupt the flow through objections and by sustaining objections. Also, appellant alleges that the trial court's refusal to permit any cross-examination of Officer Sackett, since the issues were already argued in the prior suppression hearing, was an abuse of discretion. Appellant contends that appellee continually improperly referenced the national standards set forth in the NHTSA manual through the testimony of Officer Sackett.
 {¶ 53} The trial court has broad discretion in the admission and exclusion of evidence. State v. Hymore (1967),9 Ohio St.2d 122, 128. An appellate court shall not disturb evidentiary rulings absent an abuse of discretion. Id.
 {¶ 54} This court stated in State v. Norwood (Mar. 22, 2002), 11th Dist. No. 2000-L1-46, 2002 Ohio App. LEXIS 1325, at 6-7, that:
 {¶ 55} "[t]he Sixth Amendment to the U.S. Constitution and the Ohio Rules of Evidence guarantee the right of a criminal defendant to confront the witnesses against him for the biases they may hold. State v. Minier (Sept. 28, 2001), [11th Dist.] No. 2000-P0-025, 2001 WL 1149461, at 1.
 {¶ 56} "A criminal defendant's right to confront and cross-examine a witness is not unlimited. Delaware v. VanArsdall (1986), 475 U.S. 673, 679 * * *. A trial court retains `wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.' Id. Thus, `"the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."' Id., quoting Delaware v. Fensterer (1985), 474 U.S. 15, 20
* * *. Furthermore, the `constitutional right to cross-examine adverse witnesses does not authorize defense counsel to disregard sound evidentiary rules.' State v. Amburgey (1987),33 Ohio St.3d 115, 117 * * *. While cross-examination itself is a matter of right, the extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. State v. Green (1993), 66 Ohio St.3d 141, 147
* * *, citing Alford v. United States (1931), 282 U.S. 687, 691
* * *." (Emphasis sic.) (Parallel citations omitted.)
 {¶ 57} In the case sub judice, the prosecutor objected to the relevancy of questions defense counsel asked Officer Sackett on cross-examination, relating to compliance with the NHTSA standards. The trial court sustained the objection, indicating that the admissibility issue was already determined in the motion to suppress hearing. We do not agree with appellant that the trial court's limitation of cross-examination in this respect was an abuse of discretion. The trial court did not err by permitting the prosecutor to make well-founded objections during the cross-examination of Officer Sackett by appellant's counsel. The record does not support appellant's assertion that the trial court refused to permit the defense any cross-examination of Officer Sackett. In fact, the transcript reveals that appellant's counsel cross-examined Officer Sackett at length.
 {¶ 58} Appellant's second assignment of error is without merit.
 {¶ 59} In her third assignment of error, appellant argues that the trial court erred and abused its discretion by admitting irrelevant evidence, which denied her the right to a fair trial.
 {¶ 60} Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
 {¶ 61} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage
(1987), 31 Ohio St.3d 173, 180. "Evidentiary rulings are within the discretion of the trial court and will not be overturned absent a clear abuse of discretion whereby the defendant has suffered material prejudice." State v. Bennett, 11th Dist. No. 2002-A-0020, 2005-Ohio-1567, at ¶ 39, citing State v. Long
(1978), 53 Ohio St.2d 91, 98.
 {¶ 62} In the instant matter, appellant contends that the prosecutor elicited testimony about a prior contact between appellant and Officer Sackett, which unfairly prejudiced her defense because it cast doubt on her character. She stresses that the prosecutor's intent was to show that appellant was a habitual traffic offender and that she had been stopped for a prior DUI by Officer Sackett. We disagree.
 {¶ 63} During the direct examination of Officer Sackett, the following exchange took place:
 {¶ 64} "Q Now, specifically, I'm going to jump ahead a little bit. But, Officer, based on your training and experience and your observations of [appellant], [appellant's] driving, her performance on the filed sobriety tests, were you able to form an opinion specifically as to her overall condition?
 {¶ 65} "A Yes. I feel she was intoxicated.
 {¶ 66} "Q O.K. And based upon that opinion, what exactly did you do then?
 {¶ 67} "A She was placed under arrest.
 {¶ 68} "Q Now, have you ever had a subject perform field sobriety tests and not arrested them for [DUI]?
 {¶ 69} "[Appellant's counsel]: Objection.
 {¶ 70} "The Court: Overruled.
 {¶ 71} "A Yes, I have."
 {¶ 72} The prosecutor did not continue any further with this general line of questioning on direct examination.
 {¶ 73} Again, on cross-examination, appellant's counsel asked Officer Sackett if he had ever seen appellant before in his life, and he responded that he had.
 {¶ 74} On re-direct examination, the prosecutor asked Officer Sackett if he in fact ever saw appellant before, and he replied in the affirmative. Appellant's counsel objected, which the trial court overruled. Officer Sackett testified that he had come into contact with appellant about three months prior to the incident at issue on a routine traffic stop, but indicated that no citation was issued. The prosecutor inquired whether Officer Sackett was able to make a determination between the two stops as to her overall condition, and appellant's counsel objected. The trial court sustained the objection. The prosecutor also asked Officer Sackett what inquires he made on the evening of the prior stop. Appellant's counsel objected, which the trial court sustained.
 {¶ 75} Here, appellant's substantial rights were not prejudicially affected. The prosecutor elicited relevant testimony from Officer Sackett on direct examination. On re-direct examination, although the prosecutor asked improper questions regarding the prior contact between Officer Sackett and appellant, the trial court sustained timely objections to these particular interrogatories. Thus, this exercise by the prosecutor did not amount to error. We note that appellant "opened the door" on cross-examination when her counsel asked Officer Sackett if he had ever seen appellant before. Therefore, she cannot be heard on appeal to complain about the admission of the testimony. Statev. Whitted (Dec. 13, 1996), 11th Dist. No. 96-A-0032, 1996 Ohio App. LEXIS 5646, at 15-16. Again, in any event, the trial court sustained appellant's objections and permitted only minimal re-direct examination on the point at issue.
 {¶ 76} Appellant's third assignment of error is without merit.
 {¶ 77} In her fourth assignment of error, appellant maintains that she was denied a fair trial because of the cumulative prejudicial errors that occurred at trial.
 {¶ 78} This court declines to accept appellant's invitation to revisit the foregoing assignments of error which we have determined are without merit. As we previously noted, appellant has not shown that any errors of law occurred during trial which may have affected the outcome of the proceedings or prejudiced her right to a fair trial. As such, we do not see how the absence of prejudicial error can rise to the level of cumulative error.State v. Blankenship (1995), 102 Ohio App.3d 534, 557, citingState v. Moreland (1990), 50 Ohio St. 3d 58, 69; State v.Vinson (1990), 70 Ohio App. 3d 391, 402.
 {¶ 79} Appellant's fourth assignment of error is without merit.
 {¶ 80} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Portage County Municipal Court, Ravenna Division, is affirmed.
Rice, J., concurs in judgment only, O'Neill, J., dissents with Dissenting Opinion.
[1] In her motion to suppress, appellant moved the trial court to suppress any and all evidence, including statements, opinions, observations, and field sobriety tests, on the grounds that the evidence was obtained illegally for the following reasons: (1) there was no reasonable suspicion to detain her, nor to believe that she was operating a motor vehicle while under the influence; (2) probable cause did not exist to arrest her; (3) the field sobriety tests were not conducted in accordance with established standards; (4) she was not properly advised of her Miranda rights; and (5) false and misleading information was given regarding the consequences of a refusal to submit to a test.
[2] We note that amended R.C. 4511.19, effective April 9, 2003, no longer requires an arresting officer to administer field sobriety tests in strict compliance with testing standards for the test results to be admissible. Rather, substantial compliance is required. State v. Delarosa, 11th Dist. No. 2003-P-0129,2005-Ohio-3399, at ¶ 45, fn. 4; State v. Boczar, 11th Dist. No. 2004-A-0063, 2005-Ohio-6910, at ¶ 31-36.
[3] Appellant's counsel did not further inquire how Officer Sackett knew appellant.
[4] The subject of appellant's appeal focuses on her conviction for DUI. She does not take issue with the speeding charge.
[5] Appellant's counsel orally moved for a mistrial during the trial.