[Cite as *State v. Vaughn*, 2019-Ohio-268.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-A-0045** |
| CREGG A. VAUGHN, a.k.a. CREGG ANTHONY VAUGHN, | : | |
| | : | |
| Defendant-Appellant. | : | |
| | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2017 CR 00389.

Judgment: Affirmed.


*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Judith M. Kowalski,* 333 Babbitt Road, Suite 323, Euclid, OH 44123 (For Defendant-Appellant).


CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Cregg Vaughn, appeals from the judgment of the Ashtabula County Court of Common Pleas, entered on a jury verdict, finding him guilty of possessing criminal tools, and sentencing him to two years of community control sanctions. Appellant alleges that his conviction not supported by sufficient evidence; his conviction is against the manifest weight of the evidence; that the trial court erred to his

prejudice in failing to strike the testimony of a police officer, referencing his prior criminal history; and the trial court erred in failing to declare a mistrial based on prosecutorial misconduct. We affirm the trial court's judgment.

{¶2} The Ashtabula police suspected appellant was conducting drug activities in his house at 5836 Washington Avenue in the city of Ashtabula, Ohio. On February 28, 2017, Detective William Felt of the Ashtabula police, accompanied by seven other officers, surrounded the house. Det. Felt went to the home's side door, which surveillance indicated was the chief entrance to the house. The door was open, so he entered, finding himself on a landing, with steps leading to the basement, and others, to the kitchen door. This was locked. Det. Felt heard someone exclaim, "Oh shit! The police are here." Det. Felt knocked, stating it was the police, with a warrant for appellant's arrest. The voice said to wait a minute. Det. Felt heard steps retreating from the kitchen, so he forced the door, where he spotted appellant climbing the stairs to the second floor. Det. Felt followed.

{¶3} The detective found appellant in the bathroom. He had just flushed the toilet and was sitting on its closed lid. When told he was under arrest, appellant resisted. Det. Felt had to taser him several times before he submitted. He was handcuffed by Lieutenant Parkomaki, who had just arrived upstairs.

{¶4} Det. Felt returned to the kitchen. In the front room, he spotted appellant's minor daughter, and two non-residents, Mark Orosky and Jeremy Pierce. In the kitchen, he found what he believed to be heroin, in the form of a small rock in a plastic bag with the corner torn off and some dust, on the floor. Baggies, with the corners torn or cut off, were found throughout the kitchen. At trial, both Det. Felt and Detective

Michael Palinkas testified that dealers often package their ware in such baggies, and that the corners are usually simply torn or cut off to extract the contents. Further, a plastic glove and torn pieces of aluminum were found in a drawer. Det. Felt indicated these are also commonly used by drug dealers.

{¶5} At trial, H. Jennifer Acura, a scientist with the Ohio Bureau of Criminal Investigation, testified she had tested the rock and dust found on the kitchen floor, and confirmed they were heroin. The baggies were not tested for drug residue.

{¶6} Mr. Orosky and Mr. Pierce attempted to escape. Mr. Orosky was subdued after violently resisting arrest. Mr. Pierce re-entered the house after exiting and stole the rock of suspected heroin that Det. Felt had spotted in the kitchen. Thereafter, he was stopped by the police, and immediately surrendered, admitting he had attempted to steal the suspected heroin.

{¶7} August 16, 2017, appellant was indicted on the following four counts: count one, aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2)(C)(1)(b), a third degree felony, with a forfeiture specification; count two, trafficking in heroin in violation of R.C. 2925.03(A)(2)(C)(6)(b), a fourth degree felony, with a forfeiture specification; count three, possessing criminal tools, a fifth degree felony in violation of R.C. 2923.24(A); and count four, obstructing official business, a fifth degree felony in violation of R.C. 2921.31(A)(B). Appellant pleaded not guilty and the matter came on for jury trial in March 2018. Prior to submitting the case to the jury, the trial court sua sponte dismissed the obstruction of official business charge. The jury returned its verdict March 7, 2018, finding appellant not guilty on the trafficking charges, but guilty on the charge of possessing criminal tools. The sentencing hearing went forward May

3

2, 2018.  By a judgment entry filed May 7, 2018, the trial court sentenced Mr. Vaughn to two years of community control sanctions and payment of court costs.

{¶8}    Appellant timely noticed appeal, assigning four errors.  We shall address appellant's first and second assignments of error together.  The provide:

{¶9}    "[1.] The verdict was against the manifest weight of the evidence.

{¶10} "[2.] The trial court erred in denying appellant's Rule 29 motion for dismissal, in that the evidence was not sufficient to sustain a charge of possessing criminal tools.

{¶11} "[A] 'sufficiency' argument raises a question of law as to whether the prosecution offered some evidence concerning each element of the charged offense." *State v. Windle,* 11th Dist. Lake No. 2010-L-0033, 2011-Ohio-4171, ¶25. "[T]he proper inquiry is, after viewing the evidence most favorably to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Troisi,* 179 Ohio App.3d 326, 2008-Ohio-6062 ¶9, (11th Dist.)

{¶12}  In contrast, a "court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Schlee,* 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *5 (Dec. 23, 1994).

{¶13} Appellant contends the trial court erred in failing to grant his Crim.R. 29 motion for acquittal on his conviction of possession of criminal tools. He also asserts his

4

conviction is not supported by the weight of the evidence submitted at trial. We do not agree.

{¶14} R.C. 2923.24(A) governs the crime of possession of criminal tools. It provides: "(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." *Id.*

{¶15} After appellant's arrest, Det. Felt entered the kitchen and observed a torn, knotted plastic bag containing what he believed to be heroin as well as a substance on the kitchen floor, which was later confirmed to be heroin. There were pieces of torn baggies in the kitchen and clear, protective gloves near a roll of aluminum foil. Pieces of aluminum foil were torn from the roll. Det. Felt testified the baggies were used for packaging drugs and aluminum foil is also used in the packaging of drugs. Moreover, Det. Michael Palinkas of the Ashtabula City Police Department, testified he was certified in the identification of illegal narcotics. He also testified that the plastic baggies found at the scene are frequently used in the packaging of illegal street drugs. Det. Palinkas further clarified the baggies are commonly used for heroin and cocaine. He noted:

> {¶16} "I call them tear offs. Tear offs would be the corner of a baggie, what they'll take and package their drugs in. Then they tie it off. Well instead of trying to untie a baggie, which is sometimes hard to do, they'll take and cut just over the product to open up that bag to get to the product. Whether it's heroin, coke, or what other type of thing."

{¶17} In light of the foregoing, we conclude there was sufficient, credible evidence to support the conclusion that appellant possessed criminal tools beyond a reasonable doubt.

{¶18} Appellant's first and second assignments of error lack merit.

{¶19} For his third assignment of error, appellant asserts:

5

**{¶20}** "The trial court erred to the prejudice of the appellant in not striking the testimony of detective William Felt, after he several times made reference to the appellant's alleged prior criminal history, as such reference was prejudicial and in violation of the rule of evidence."

**{¶21}** Appellant contends that the trial court erred in failing to strike the references Det. Felt made regarding his prior encounters with appellant. Because the trial court struck the testimony and advised the jury to disregard the testimony, appellant's contention lacks merit.

**{¶22}** Initially, during direct examination, the prosecutor asked Det. Felt how he knew appellant, to which he responded: "I know Mr. Vaughn through previous criminal investigations." Defense counsel objected and the court sustained the objection, stating "I have to strike that last answer. Members of the jury, you are instructed to disregard it."

**{¶23}** Next, again on direct, the prosecutor asked Det. Felt what he did after encountering appellant in the bathroom. Det. Felt stated: "Mr. Vaughn at that time was seated on the toilet. I told him that he was under arrest and to stand up. He did not. And through previous contact with Mr. Vaughn, I would up [sic] deploying my department issued electronic stun device. It's a taser." Defense counsel again objected and the trial court sustained the same. After a sidebar, the trial court advised the jury that "[t]he last comment that was not in response to the answer is being stricken by the Court. The jury's instructed to disregard it."

**{¶24}** Appellant is incorrect that the trial court failed to strike the testimony. Furthermore, the instruction that the jury must disregard the statements was sufficient to cure any potential taint. "'A trial jury is presumed to follow the instructions given to it by the judge.'" *State v. Adams*, 11th Dist. Ashtabula No. 2012-A-0025, 2013-Ohio-1603, ¶58, quoting *State v. Henderson*, 39 Ohio St.3d 24, 33 (1988). We discern no error.

**{¶25}** Appellant's third assignment of error lacks merit.

**{¶26}** For his fourth and final assignment of error, appellant contends:

**{¶27}** "The appellant was denied due process of law and his right to a fair trial by reason of the prosecutor referencing defendant's failure to testify about his use of the alleged criminal tools."

**{¶28}** Mr. Vaughn was charged with possessing criminal tools – essentially, the baggies. In closing argument, defense counsel made the following argument on this point.

**{¶29}** Defense Counsel: "Let's start by some of the obvious things. Now first of all, the prosecutor has shown you all these pictures of these baggie, with the corners torn, cut, whatever you want to believe. First of all, my wife and I take care of my five grandchildren every day, and she packs lunches every day. They're in baggies, so you'd find baggies in my house by the ton. Also, I have a chess game, computer chess game, and I have baggies I keep my men in."

**{¶30}** In rebuttal, the assistant prosecutor told the jury the following.

**{¶31}** Assistant Prosecutor: "One funny thing Mr. PerDue talked about, and it's about the plastic bags. Most of us use them to store something in, pack our lunches in, keep our slice of apple pie in so it doesn't get contaminated or anything. *But there was*

7

*no evidence presented that Cregg Vaughn made any type of sandwiches for his three year old girl.* There's no evidence of anything beyond packing heroin in those plastic bags." (Emphasis added.)

{¶32} Appellant argues that this statement by the assistant prosecutor strongly implied to the jury that appellant was required to testify, in denial of his right to remain silent, and that the trial court should have declared a mistrial (which defense counsel requested). We do not agree.

{¶33} In *State v. Wright*, 11th Dist. Portage No. 2000-P-0128, 2002 WL 480328, *7 (March 29, 2002), this court observed:

> {¶34} The conduct of a prosecutor during trial is not grounds for error unless it deprives a defendant of a fair trial. *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, * * *. A prosecutor is encouraged to advocate strongly and even vehemently for a conviction. *State v. Draughn* (1992), 76 Ohio App.3d 664, 671, * * *. The test for prosecutorial misconduct is whether the alleged remark was improper and, if so, whether it prejudicially affected the substantial rights of the defendant. *State v. Smith* (2000), 87 Ohio St.3d 424, 442, * * *, citing *State v. Smith* (1984), 14 Ohio St.3d 13, 14, * * *; see, also, *State v. Lott* (1990), 51 Ohio St.3d 160, * * *. Factors such as the nature of the closing remarks, whether the trial court gave corrective instructions, and the strength of the evidence against the defendant must be taken into account. *State v. Owens* (Nov. 9, 1990), Lake App. No. 89-L-14-047, unreported, 1990 Ohio App. LEXIS 4891, at 4, citing *State v. Clark*, (1974), 40 Ohio App.3d 365, * * *." (Parallel citations omitted.)

{¶35} "Mistrials should only be declared when the ends of justice so require and a fair trial is no longer possible." *State v. Albanese*, 11th Dist. Portage No. 2005-P-0054, 2006-Ohio-4819, ¶26. The decision to grant or deny a mistrial is within a trial court's discretion. *Id.*

{¶36} In this case, the prosecutor's remark, that there was no evidence appellant was using the baggies to make sandwiches for his daughter, does not directly imply

8

appellant needed to testify in his own defense. The remark was made in response to defense counsel's observations that baggies are used in most households for various innocuous reasons, including sandwich making. The prosecutor's statement essentially emphasized that the baggies were located near and, in one case included, heroin. In light of the evidence presented at trial, as well as defense counsel's attempt to lessen the import of the existence of the baggies in the kitchen, we conclude the remark was not improper.

{¶37} We acknowledge the well-settled position that a prosecutor may not comment on a defendant's failure to testify. *Griffin v. California* (1965), 380 U.S. 609 (1965); *State v. Fears*, 86 Ohio St .3d 329, 336 (1999). The prosecutor, however, did not specifically do so in this matter. Moreover, it bears noting that the prosecution is entitled to comment on defendant's failure to offer evidence. *State v. Collins*, 89 Ohio St.3d 524, 527 (2000); *see also State v. Simpson,* 2d Dist. Montgomery No. 19797, 2004–Ohio–669, at ¶65. "Such comments do not imply [nor] necessarily constitute a penalty on the defendant's exercise of his Fifth Amendment right to remain silent." *Collins*, *supra*. The test for prosecutorial misconduct vis-a-vis a defendant's failure to testify is "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *State v. Webb*, 70 Ohio St.3d 325, 328 (1994), quoting *Knowles v. United States*, 224 F.2d 168, 170 (10th Cir.1955). Here, the prosecutor's language did not evince an intention that the jury draw a forbidden inference relating to appellant's exercise of his right against self-incrimination. The prosecutor, therefore, did not commit misconduct.

{¶38} Appellant's fourth assignment of error lacks merit.

{¶39} For the reasons discussed in this opinion, the judgment of the Ashtabula County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____


COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.


{¶40} Finding merit in Mr. Vaughn's fourth assignment of error, I would vacate his sentence, reverse, and remand. In this case, the trial court did not allow defense counsel to make his motion for a mistrial before the jury. The assistant prosecutor's remarks were improper, and affected a substantial right – a defendant's right to remain silent, which is sacrosanct. The other evidence in this case was not overwhelming, but underwhelming: the trial court itself dismissed the obstruction charge, and the jury found Mr. Vaughn not guilty on both counts of trafficking. The *only* crime for which Mr. Vaughn was convicted was that of possessing criminal tools – the baggies – to which issue the improper remarks were directed. This indicates not only that Mr. Vaughn suffered the inherent prejudice of having his constitutional right to remain silent impugned, but that he suffered actual prejudice due to the remarks.

{¶41} I respectfully dissent.