[Cite as *State v. Tawney*, 2019-Ohio-3238.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2018-P-0060** |
| - vs - | : | |
| LARRY R. TAWNEY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2017 CR 00993.

Judgment: Affirmed.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Theresa M. Scahill,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Michael J. Feldman,* Lallo & Feldman Co., LPA, 4230 State Route 306, Suite 240, Willoughby, OH 44094 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Larry R. Tawney, appeals the July 12, 2018 judgment of the Portage County Court of Common Pleas sentencing him to a total of twenty-one years imprisonment for two counts of felonious assault, and one count each of abduction, aggravated burglary, robbery, disrupting public service, and grand theft auto. For the reasons discussed herein, the judgment is affirmed.

{¶2} Mr. Tawney was indicted on seven counts: count one: felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(2); count two: abduction, a felony of the third degree, in violation of R.C. 2905.02(A)(2)(C); count three: aggravated burglary, a felony of the first degree, in violation of R.C. 2911.11(A)(1)(B); count four: felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(1); count five: robbery, a felony of the second degree, in violation of 2911.02(A)(2)(B); count six: disrupting public services, a felony in the fourth degree, in violation of R.C. 2909.04(A)(1); and count seven: grand theft auto, a felony of the fourth degree, in violation of R.C. 2913.02. He pleaded not guilty and the case proceeded to trial.

{¶3} Mr. Tawney and the victim were in a boyfriend-girlfriend relationship. She testified that Mr. Tawney used cocaine, methamphetamine, and marijuana daily and admitted that about the time she met him, she also began using cocaine. According to the victim's testimony, a few months into their relationship, Mr. Tawney became physically abusive toward her.

{¶4} According to the victim's testimony, on the evening of November 8, 2017, she agreed to meet with Mr. Tawney. She drove to his mother's house, where he resided, and from there they walked to a friend's house where they "hung out" and drank beer until the early morning. Upon their return to Mr. Tawney's house, she wanted to return home. He did not want her to leave and an argument ensued. She got in her car and started it, but Mr. Tawney got in the passenger's side, removed the keys from the ignition, and took her phone and keys away from her. He told her to go inside and when she did not get out of the car, he went around to the driver's side door and dragged her by her coat out of the car and into the house.

2

{¶5} The victim testified that once they were inside, Mr. Tawney demanded she cook him breakfast. When she refused, he pushed her into a corner and held a serrated knife to her throat, threatening to kill her and berating her with derogatory names and insults. He eventually started making some eggs and she tried to sneak past him, but he caught her, threw her to the ground spouting more profanity, and put his foot on her head with enough of his body weight that she couldn't get up. At some point, his mother came in the room and stepped over the crying victim without comment. Then, with his mother still present, she tried to stand up and Mr. Tawney took the hot cast iron skillet and held it "super close" to her face and threatened to burn her so badly that no one would want to look at her again. He then pushed her into a chair at the kitchen table and she watched him eat.

{¶6} On direct examination, and coinciding with the police report, the victim testified that after Mr. Tawney ate, she then went upstairs and took a nap until about 4:30 p.m. On cross examination, the victim stated that she went upstairs and took a nap immediately upon their return home until Mr. Tawney woke her up at 4:30 p.m. and then the violence in the kitchen occurred.

{¶7} Then, either directly after waking her up or directly following the violence in the kitchen, Mr. Tawney told her he was going to take her to Youngstown and sell her for money. She was able to convince him that if he needed money so badly she could borrow some money from her parents instead, so he drove the victim in her car to her parents' house. Once there, he instructed her to go inside, get the money, and return quickly.

3

{¶8}   When she opened the garage, she realized her parents were not home, so she ran into the house and deadbolted the door.  She thought she was safe but then she heard him kicking the door, so she ran for the house phone.  On the third kick, he broke the door down.  He grabbed the phone out of her hands, dislodged the battery, threw her to the ground, stomped on her head a number of times, and kicked her repeatedly in her privates and in her back.  He told her that if she got him in trouble he would "hunt her down and end her."  She pleaded with him to just go get her purse and then she would go with him.  When he went for her purse, she ran across the street, screaming for help and pounding on the neighbor's windows.  The neighbor called 9-1-1 and her parents.  Mr. Tawney took the victim's purse and drove off in her car.

{¶9}   The police and EMS arrived, followed shortly thereafter by her parents. Though she was disheveled, bruised, and crying, minimal immediate medical care was necessary, but upon the recommendation of EMS and the police, her parents drove her to the emergency room.

{¶10}  In addition to the victim's testimony, the state also presented the testimony of the investigating police officer and the nurse who saw her at the hospital.  Their testimony corroborated the victim's testimony.  The police officer who investigated the incident testified that he found the door from the house to the garage was shattered, and inside the house he found the phone and battery were separated and on the floor. Pictures of the shattered door were entered into evidence.

{¶11}  The nurse testified that the victim had blood in her urine, which could be caused either by injuries to her back or privates or a urinary tract infection, but that the victim did not have a urinary tract infection.  The nurse also testified that based on the

4

color of the bruises, they were likely no older than a day or two, and that many bruises were still developing. Numerous pictures of the victim's bruises were admitted, including one showing a permanent scar.

{¶12} While the victim's injuries were not disputed, Mr. Tawney maintained that he was not the perpetrator. Mr. Tawney did not testify, nor did he call any witnesses or offer any evidence.

{¶13} The jury found him guilty of all seven counts and the court sentenced him to seven years imprisonment for each of the two counts of felonious assault, twenty-four months for abduction, and five years for aggravated burglary, all to run consecutively to one another; and four years for robbery, twelve months for disrupting public service, and twelve months for grand theft auto to run concurrently to one another and concurrent to the aforementioned consecutive sentences for a total of twenty-one years imprisonment.

{¶14} Mr. Tawney timely appealed, assigning for our review two assignments of error. The first states:

> {¶15} The prosecutor's statements in closing argument related to appellant's failure to testify violated appellant's privilege against self-incrimination guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution.

{¶16} The statement to which Mr. Tawney refers occurred in the following segment of the state's closing argument:

> {¶17} [STATE]: Now, ladies and gentlemen, his closing argument has been nothing but speculation. The evidence in this case is a solid match. Look at the evidence.

> {¶18} Now, I expected [defense counsel] to come up here and muddy the waters. He's a very good advisory, and he did so very charmingly. We've worked together for a lot of years and I really respect [defense counsel].

5

**{¶19}** But, ladies and gentlemen, he gets up here and he talks about how unreliable the victim was and how somehow this case is fabricated.

**{¶20}** Now, it's no big surprise to me, ladies and gentlemen, because that's the kind of defense that I see in the hundreds of cases that I've litigated, that the evidence is somehow fabricated or untrue. It's no big surprise to me, ladies and gentlemen.

**{¶21}** Now ask yourself, what else can he say? What can he say? **He has zero evidence. And when the evidence is not –**

**{¶22}** **[DEFENSE COUNSEL]: Objection, your Honor.**

**{¶23}** **THE COURT: I'll sustain the objection.**

**{¶24}** **[STATE]: The evidence is uncontroverted, ladies and gentlemen. Uncontroverted.** (Emphasis added.)

**{¶25}** After closing arguments, defense counsel moved for a mistrial based on the prosecutor's statement. The following conversation occurred outside the presence of the jury:

**{¶26}** [DEFENSE COUNSEL]: I have to at this time move for a mistrial based on the Prosecutor's closing argument that states that what evidence does the Defense have. It sort of implies what has the Defense proven or presented. I think it violates his right to remain silent, and, instead, invites the Jury to consider those issues. And at this time I think I have to move for a complete mistrial because I don't think there's any instruction that would cure it without doing more damage. Thank you.

**{¶27}** THE COURT: [Prosecutor]?

**{¶28}** [STATE]: Your Honor, the evidence in this case has been uncontroverted and that's what I was indicating, that they are to review the evidence in this case.

**{¶29}** THE COURT: Okay. And I did sustain your objection. I will, obviously, in my charge to the Jury acknowledge that the Defendant is not required to testify, not required to prove anything. And that should be a curative instruction, so I'll deny your motion, [defense counsel].

**{¶30}** Accordingly, the court instructed the jury, in pertinent part, as follows:

{¶31} THE COURT: The opening statements and the closing arguments of counsel are designed to assist you, but they are not evidence.

{¶32} The opening and closing arguments, which you have just heard, are provided by law for the purpose of aiding the jury in its analysis of the evidence, giving the jury the benefit of such deductions and reasonable inferences made by counsel as may logically appeal to the wisdom and judgment of the jury, and these arguments are not evidence.

{¶33} Evidence does not include statements that were stricken by the Court or which you were instructed to disregard. Such statements are not evidence and must be treated as though you had never heard them.

{¶34} You must not speculate as to why an objection was sustained * * *.

{¶35} * * *

{¶36} It is not necessary that the Defendant take the witness stand in his own defense. He has a constitutional right not to testify. The fact that he, the Defendant, did not testify must not be considered for any purpose. The Defendant is not required to provide or prove any evidence.

{¶37} On appeal, Mr. Tawney again raises issue with the prosecutor's "zero evidence" remark. He directs our attention to our recent decision in *State v. Vaughn*, 11th Dist. Ashtabula No. 2018-A-0045, 2019-Ohio-268, stating "the test for prosecutorial misconduct vis-a-vis a defendant's failure to testify is 'whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" *Id.,* at ¶37 quoting *Webb, supra.* We do not find that "[h]e has zero evidence" would naturally and necessarily be taken by the jury as a comment on Mr. Tawney's decision to not testify.

{¶38} As we noted in *Vaughn*, "'[f]actors such as the nature of the closing remarks, whether the trial court gave corrective instructions, and the strength of the

7

evidence against the defendant must be taken into account.'" *Id.* at ¶34*, quoting State v. Wright,* 11th Dist. Portage No. 2000-P-0128, 2002 WL 480328, *7.

**{¶39}** "[I]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning. * * * Counsel is entitled to latitude in closing arguments as to what the evidence has shown." *State v. Twyford*, 94 Ohio St.3d 340, 2002-Ohio-894 (2002). Here, we find that the jury could have taken this statement as a comment on the amount or nature of evidence, not directly on Mr. Tawney's decision not to testify. Moreover, the court properly instructed the jury that the defendant did not have to testify or prove any element. Finally, we find the evidence was overwhelmingly against Mr. Tawney. Accordingly, we do not find that the prosecutor's comment prejudicially affected Mr. Tawney's substantial rights.

**{¶40}** Mr. Tawney further asserts that even the prosecutor's statement that the evidence was uncontroverted was not permitted pursuant to *State v. Webb,* 70 Ohio St.3d 325, 328 (1994), which states, "[a] prosecutor generally may note that his or her evidence is uncontradicted unless it is evidence only the defendant could contradict." He argues that the victim's testimony was the basis for all of the criminal charges and provided the necessary elements to those charges, and that the only person who could contradict that testimony was Mr. Tawney. We disagree. Here, the state did not rely solely on the victim's testimony but also introduced evidence from the investigating officer and hospital nurse. Moreover, according to the victim's testimony, Mr. Tawney's mother witnessed at least part of the assault, but defense counsel made the decision not to call her as a witness.

8

{¶41} Furthermore, "[a] reference by the prosecutor in closing argument to uncontradicted evidence is not a comment on the accused's failure to testify, where the comment is directed to the strength of the state's evidence and not to the silence of the accused, and where the jury is instructed * * * to not consider the accused's failure to testify." *State v. Williams,* 23 Ohio St.3d 16, 19-20 (1986). Viewing the prosecutor's statement in context, we find the comment was directed to the strength of the evidence not Mr. Tawney's decision not to testify, and, as discussed above, the court properly instructed the jury.

{¶42} Mr. Tawney's first assignment of error is without merit.

{¶43} His second assignment of error states:

{¶44} The appellant's due process rights and rights to a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution were violated by the ineffective assistance of counsel.

{¶45} To establish ineffective assistance of counsel, an appellant "must show (1) deficient performance by counsel, that is, performance falling below an objective standard of reasonable representation, and (2) prejudice-a reasonable probability that, but for counsel's errors, the result would have been different." *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903 (2018), citing *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052.

{¶46} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, *supra* at 689. *See also State v. Rice*, 11th Dist. Lake No. 2018-L-065, 2019-Ohio-1415, ¶88. Furthermore, ""because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's

9

conduct falls within the wide range of reasonable, professional assistance. (* * *)." * * * Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. [Thus,] [t]o warrant reversal, 'the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." * * *'" (Citations omitted.) *Id.* at ¶89.

{¶47} On appeal, Mr. Tawney asserts the "totality of the circumstances, the overall approach to the case, and serious lapses in judgement" support a finding of ineffective assistance of counsel. He points to counsel's short opening statement, his failure to recognize prejudice to the jury during voir dire, his unawareness of the specific potential penalties or sentences Mr. Tawney was facing, a failure to object to hearsay statements and leading questions, his failure to explore possible defenses, his late request to subpoena witnesses, and his decision to call no witnesses or put on any evidence. We address each in turn.

{¶48} During voir dire, the state and the court noticed Mr. Tawney was falling asleep. Outside of the hearing and view of the jury, the court sent Mr. Tawney for a drug screen, which showed the existence of marijuana, cocaine, and methamphetamines in his system. The court recessed for the day, telling the jury that the court encountered a "significant technical glitch." The next day, the court again addressed Mr. Tawney outside the presence of the jury and, being convinced of his present ability to assist in his defense, proceeded with trial. The following conversation

10

provides helpful context to many of the arguments he now makes under this assignment of error:

{¶49} THE COURT: Before we bring the Jury in, I want to go over a few matters. Yesterday, after voir dire and opening statements, it was clear to this Court that the Defendant was under the influence of something. I do not feel that it effected the voir dire or the opening statements. It is not clear whether or not the Jury saw him nodding off. I don't think so.

{¶50} But now I need to know from you [defense counsel], you've met with your client this morning, is he able to assist in his defense today …?

{¶51} [DEFENSE COUNSEL]: * * * I have spoken with Mr. Tawney this morning. * * * His demeanor is such that I think he's in a position to assist in his own defense today.

{¶52} The other thing I'd say for the record, Your Honor, is I know the Court had some concerns. * * * I wasn't watching him 'cause I was focused more on the Jury yesterday. **I don't think anything went on yesterday that would have prejudiced him with regard to voir dire and opening statement. We had met several times to prepare for trial before yesterday, and I really didn't need to consult with him, so I don't think we have an issue there.** (Emphasis added.)

{¶53} The court then addressed Mr. Tawney directly, confirmed he knew what charges he was facing and that he had no questions. Satisfied that he was in a position to assist his defense, the court then asked the state to put the plea offer on the record, which included reduced and dropped charges.

{¶54} THE COURT: [Defense counsel], did you go over that with your client?

{¶55} [DEFENSE COUNSEL]: * * * I did. * * * [I]t's also important for the record that he would understand that the second degree felonies would carry between three and eight years in prison. I must admit my feelings, I don't remember what a felony three carries in this 'cause they keep changing it, but I think it would carry a maximum penalty of five years in prison. So he would be looking at a presumptive minimum of three years, up to 21 years.

11

{¶56} * * *

{¶57} [THE STATE]: A felony of the third degree is 36 months, and the felony two would yield two to eight.

{¶58} * * *

{¶59} [DEFENSE COUNSEL]: So you're looking at a potential minimum of * * * two years and up to a maximum of 19 years.

{¶60} * * *

{¶61} THE COURT: And * * * he's looking at 41 years in prison if he's convicted of all counts. Do you understand that, Mr. Tawney?

{¶62} THE DEFENDANT: Yes, I do, ma'am.

{¶63} THE COURT: Okay. And you are rejecting her offer?

{¶64} THE DEFENDANT: Yes.

{¶65} * * *

{¶66} THE COURT: Anything on behalf of the State?

{¶67} [THE STATE]: * * * This Defendant claimed that he wasn't impaired in any way, his judgment wasn't impaired in any way yesterday, I just wanted to make certain that he was satisfied with the Jury.

{¶68} THE COURT: Sir, are you satisfied with the Jury that [defense counsel] picked for you?

{¶69} THE DEFENDANT: Yeah. Yeah. We talked about --

{¶70} THE COURT: Do you have any qualms at all about any of the Jurors?

{¶71} THE DEFENDANT: No. I had one and she was removed, so –

{¶72} THE COURT: Okay. And, sir, are you happy with the opening statement made by [defense counsel]?

{¶73} THE DEFENDANT: Yes, I am.

{¶74} THE COURT: And you think he is protecting your rights in this matter?

{¶75} THE DEFENDANT: Yes.

**{¶76}** THE COURT: And he's defending you well?

**{¶77}** THE DEFENDANT: Yeah.

**{¶78}** THE COURT: Okay. Again, you are satisfied with this representation; is that correct?

**{¶79}** THE DEFENDANT: Yes.

**{¶80}** Now on appeal, however, Mr. Tawney raises issue with his representation, specifically his opening statement, his finding the jury was not prejudiced by Mr. Tawney falling asleep during voir dire, and defense counsel's inexact remembrance of the potential sentence he was facing. Regarding opening statements, we find his argument on appeal unpersuasive as he expressly told the court he was satisfied with his defense counsel's opening statement. Moreover, regarding voir dire, the court doubted that the jury saw Mr. Tawney nodding off and Mr. Tawney himself maintained that he was not nodding off but looking down so as to not "aggressively stare at somebody." Finally, to the extent defense counsel forgot the potential sentence Mr. Tawney was both facing and the deal he was being offered, we do not find he was prejudiced and the result would have been any different had defense counsel remembered because both the court and the prosecutor spoke up and clarified exactly what Mr. Tawney was facing. The court then confirmed Mr. Tawney's understanding.

**{¶81}** He also contends on appeal that defense counsel failed to object to hearsay statements and leading questions. He specifically points to the testimony of the investigating police officer who responded to the 9–1–1 call made from the victim's neighbor's house. Preliminarily, we note that defense counsel correctly identified the 9–1–1 call as admissible hearsay pursuant to the excited utterances exception. "9–1–1 calls are generally admissible as excited utterances or under the present sense

13

impression exception to the hearsay rule." *State v. Martin*, 5th Dist. Tuscarawas No. 2015AP0010, 2016-Ohio-225, ¶59, citing, inter alia, *State v. Smith*, 80 Ohio St.3d 89, 107-108 (1997). Here, upon the admission of the 9–1–1 call, defense counsel noted on the record, "I consider objecting that this is a business record. Police records do not meet the business record exception, so this is also based on the rule that says spontaneous utterance, and, therefore, I don't object to it."

{¶82} The entire 9–1–1 call was played for the jury. The call was placed by the victim's neighbor, who did not herself testify. During the call, the neighbor states the victim ran over to her house saying her boyfriend is trying to kill her. For the next minute, the dispatcher asks questions which the neighbor repeats to the victim; the victim can be heard in the background answering the questions followed by the neighbor restating them to the dispatcher. A minute and a half into the eight minute call, the victim comes to the phone and answers the dispatcher's questions directly.

{¶83} Following the playing of the 9–1–1 call, the officer who responded to the call testified. Mr. Tawney specifically claims error with the officer's statement that "[the neighbor] called and said that her neighbor [the victim] ran across the street to her house stating that * * * her boyfriend had assaulted her." Further, Mr. Tawney broadly asserts that the "testimony includes additional hearsay statements as well as leading questions of the witness in a continual pattern, all prejudicial to the Appellant." He cites one page in the transcript but does not direct our attention to any statement on that page in particular.

{¶84} Nevertheless, in reviewing the page Mr. Tawney points us to, we do find an instance of hearsay not followed by an objection; after being asked whether there

14

was any corroborating evidence, the responding officer states, "[t]he neighbor did state that she saw Mr. Tawney leave the area in her vehicle." From context, it appears that the "she" that is referred to is the neighbor and "her car" is the victim's car. We note, however, that it is not apparent from the 9–1–1 call that the neighbor herself saw Mr. Tawney drive off; it is the victim, whose answer is relayed through the neighbor, who states Mr. Tawney drove off in her car.

**{¶85}** Ultimately, however, we find these two errors to be harmless. Crim.R. 52(A) states "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." *Id.* "The term 'substantial rights' has been interpreted to require that '"the error must have been *prejudicial*." (Emphasis added.)' [*State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761], quoting [*United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, (1993).] If a court determines that the error did not affect the defendant's substantial rights, then the error is harmless and '"shall be discarded."' *Id.*, quoting Crim.R. 52(A)." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶23.

**{¶86}** We do not find these statements to be prejudicial to Mr. Tawney. First, the jury had just heard the 9–1–1 call in which the neighbor stated that the victim ran to her house and pounded on the door saying her boyfriend was trying to kill her. The officer's comment that the neighbor said the victim was assaulted by her boyfriend, though not verbatim, essentially repeated what the jury heard in the 9–1–1 call. The officer's comment did not provide any new evidence.

**{¶87}** The second hearsay statement, that the neighbor saw Mr. Tawney drive off, was not indicated in the 9–1–1 call. However, even excising the officer's statement,

15

we find the evidence against Mr. Tawney was overwhelming. "'We are * * * mindful that our role upon review of this case is not to sit as the supreme trier of fact, but rather to assess the impact of this erroneously admitted testimony on the jury.'" *Morris*, *supra,* at ¶29, quoting *State v. Rahman*, 23 Ohio St.3d 146, 151 (1986). With that in mind, we note that the jury had heard the victim herself testify at trial and state on the 9–1–1 call that Mr. Tawney drove off in her car. The car was found where the victim anticipated it would be abandoned. The officer saw firsthand the damage to the door and phone, which corroborated the victim's other testimony. Thus, in light of the overwhelming evidence against him, we find the error is harmless beyond a reasonable doubt.

{¶88} Mr. Tawney also faults his defense counsel for failing to explore a possible defense the victim herself raised. She stated, "[w]hen I was forced inside the house, he convinced me that I couldn't leave, so it would be best, since I had been drinking, to lay down, and, in my head I thought, you know what, that does make some sense, I don't want to be drinking and driving, so I walked slowly up the stairs and laid down * * *." Mr. Tawney argues this shows "a rather innocent motive and intention" on his part. However, consider the testimony that Mr. Tawney forcibly dragged her into the house and thereafter threatened to kill her, however, we find it unlikely the jury would have been convinced he was acting with an innocent motive.

{¶89} Mr. Tawney also questions his defense counsel's decision to not question "the lack of physical evidence and corroboration by the photos which show no marks on her face." There was, however, photographic evidence submitted to show marks on the victim's face. The nurse who saw the victim at the hospital testified that she had an abrasion above her eyebrow and bruising under her eye and along the bridge of her

16

nose.  Thus, we do not find his defense counsel ineffective for failing to argue there was no such evidence.

{¶90}  Finally, Mr. Tawney also calls into questions his late request to subpoena witnesses and, ultimately, his decision to not call any witnesses or put on any evidence. He speculates, "one can only wonder why he did not call the Appellant to testify or Appellant's mother or the neighbor with whom Appellant and [the victim] spent the night drinking for hours prior to the events which were set forth in the indictment." Importantly, however, he does not state, nor do we have any evidence to suggest, that had his mother, himself, or the neighbor been called to testify that the outcome would have been different.  A mere vague insinuation that the testimony would be favorable to appellant does not convince us that his defense counsel erred in failing to call them as witnesses.

{¶91}  Moreover, defense counsel explains this decision to the court:

{¶92}  [DEFENSE COUNSEL]: I've spoken at length with [Mr. Tawney's mother]. I don't believe that anything she would testify to would be relative to the facts at issue here. [Mr. Tawney] and I have not made a decision about his testimony. He has asked that I ask for a continuance to subpoena a number of individuals who he believes are engaged in selling drugs, would have sold drugs to [the victim], would perhaps been involved with her in other ways in order to attack her credibility with regard to her testimony about her drug use and her relationships and that that would be for the purpose of attacking her credibility.

{¶93}  * * *

{¶94}  [THE STATE]: Certainly that would be improper to do so. The State would be opposed to any witnesses of this nature. She has no criminal record. That would be the only way he could impeach her is via criminal record. I would indicate that certainly that has no relevance to the case at hand.

{¶95}  * * *

17

{¶96} [DEFENSE COUNSEL]: Well, the other issue is these gentlemen would have to come in, Your Honor, and admit that they were engaged in the sale of illegal narcotics and they might be engaged in some human trafficking and promoting prostitution.

{¶97} * * *

{¶98} [THE STATE]: Again, I don't think any witness would ever come in and admit those things, but, even if they were to, there is no relevance, there's no probative value that has to do with the case at hand.

{¶99} THE COURT: And, again, I'm going to deny your motion, [defense counsel]. There is no probative value relative to this case, no relevance; and, therefore, I'm going to deny your motion for a continuance.

{¶100} We cannot fault counsel on the timeliness of the request when the basis of the denial was relevance, not timeliness. After the denial of this motion, the court did recess for the day so that Mr. Tawney and his counsel could discuss whether or not Mr. Tawney would himself testify. The next day, the following conversation took place:

{¶101} [DEFENSE COUNSEL]: I have spoken to Mr. Tawney in great length about whether or not he would testify. We've talked about the risks and benefits and both in terms of his testifying or not, the state of the evidence as it was presented by the prosecution. My recommendation to him is that he not testify. I would ask the Court to inquire of him and his choice.

{¶102} THE COURT: Mr. Tawney, you understand you have the right to testify or not testify, that's your constitutional right? What do you choose to do today?

{¶103} THE DEFENDANT: Not testify.

{¶104} * * *

{¶105} THE COURT: Okay. And you've gone over the pros and cons with [defense counsel]?

{¶106} THE DEFENDANT: Yes.

{¶107} THE COURT: Okay. And you're satisfied that's the right decision for you?

{¶108} THE DEFENDANT: Yes.

{¶109} Mr. Tawney has failed to show that defense counsel's actions fell below an objective standard of reasonable representation or that the outcome would have been any different had defense counsel called witnesses, presented evidence, or advised him to testify; thus, we do not find that his defense counsel was ineffective in this regard.

{¶110} Of the many arguments Mr. Tawney makes in arguing ineffective assistance of counsel, we find that his defense counsel erred in failing to object to two instances of hearsay, which, as discussed above, were harmless and did not prejudicially affect Mr. Tawney's substantive rights. His remaining arguments as to ineffective assistance of counsel have no merit.

{¶111} Accordingly, Mr. Tawney's second assignment of error is without merit.

{¶112} In light of the foregoing, the judgment of the Portage County Court of Common Pleas is affirmed.

MATT LYNCH, J.,

MARY JANE TRAPP, J.,

concur.