[Cite as *State v. Clark*, 2024-Ohio-6001.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

GERMAINE D. CLARK,

        Defendant-Appellant.

CASE NO. 2024-A-0048

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2023 CR 00428

**O P I N I O N**

Decided: December 23, 2024
Judgment: Affirmed

*Coleen M. O'Toole*, Ashtabula County Prosecutor, and *Mark Majer*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Margaret Brunarski*, Ashtabula County Public Defender, and *Michael J. Ledenko*, Assistant Public Defender, 22 East Jefferson Street, Jefferson, OH 44047 (For Defendant-Appellant).

ROBERT J. PATTON, J.

{¶1} Defendant-appellant, Germaine D. Clark ("appellant"), appeals from the judgment of the Ashtabula County Court of Common Pleas sentencing appellant to an aggregate indefinite prison term of six to nine years upon his convictions of felonious assault and assault.

{¶2} Appellant alleges prosecutorial misconduct during closing arguments. Specifically, he avers that the assistant prosecutor improperly discussed information that

was not admitted into evidence and that the assistant prosecutor commented on appellant's failure to testify. We disagree.

{¶3} The assistant prosecutor's comments regarding text messages between appellant and the victim in closing arguments were not improper. The defense first introduced the text messages during the cross-examination of Ashtabula County Sheriff's Deputy John Barhoover ("Deputy Barhoover"). The text messages were again referenced in the body cam video introduced and presented as Defense Exhibit 2. Therefore, this evidence, introduced by the defense, was properly before the jury and the State was allowed to discuss it during their closing remarks.

{¶4} We also conclude that the assistant prosecutor's closing arguments did not rise to the level of prosecutorial misconduct regarding the defendant's failure to testify. Both the State and the defense repeatedly told the jury that this case was a "he said, she said" type case. The assistant prosecutor reiterated this sentiment in their summation. Because the language used was not "manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." (Emphasis deleted.) *State v. Webb*, 70 Ohio St.3d 325, 328 (1994) quoting *Knowles v. United States*, 224 F.2d 168, 170 (10th Cir.1955).

{¶5} As such, we affirm the judgments of the Ashtabula County Court of Common Pleas.

## Substantive and Procedural Facts

{¶6} On September 23, 2023, the Ashtabula County Grand Jury returned a two-count indictment, charging appellant with felonious assault, a second-degree felony, in violation of R.C. 2903.11(A)(1) and (D)(1)(a), first degree felonies, in violation of

2

R.C.2907.02(A)(1)(b) (Count 1) and assault, a first-degree misdemeanor, in violation of R.C. 2903.13(A) and (C) (Count 2).[1]

{¶7} The case proceeded to trial on April 8, 2024. The following facts were presented at trial:

{¶8} T.K. testified that on August 2, 2023 she was homeless and staying at a room at the Economy Inn with her friend, appellant. T.K. testified that she and appellant were drinking for her birthday. The pair got into an argument and appellant left. Appellant allegedly accused her of stealing his drugs. According to T.K., appellant later called T.K. and threatened to shoot the windows out of her hotel room.

{¶9} Due to the threat, T.K. testified she left the Economy Inn and got a room across the street at the Edge of Town Motel in Ashtabula Township, Ashtabula, Ohio. She checked into the motel on August 3, 2023, sometime after midnight.

{¶10} T.K. testified that appellant called her requesting that T.K. return his liquor bottle. T.K. met with appellant down the street at the Family Dollar to return the bottle to him. After the exchange, appellant accompanied T.K. back to her room at the Edge of Town Motel .T.K. testified that at this point, she was not afraid of appellant.

{¶11} The pair continued drinking. At some point T.K. and appellant had a second argument which turned physical. T.K. testified that they were screaming at each other and then appellant was on top of her on the bed with a hand around her throat, hitting her in the head. Eventually, appellant stopped hitting her, threw her toward the bathroom, and told her to "get in the bathroom before I kill you." (Dkt. 65, T.p. Trial Transcript, p. 148).

---

1. This case was originally filed in the Ashtabula Municipal Court in Case No. 2023CRA1005 and was bound over to the Ashtabula Court of Common Pleas on August 21, 2023 after a preliminary hearing.

3

Case No. 2024-A-0048

According to T.K., once she was in the bathroom, appellant left the motel room. T.K. testified that hotel staff was at her door and police officers arrived right after appellant left.

{¶12} Joana Fasano Colantino ("Ms. Colantino") is the owner of the Edge of Town Motel. She and her husband reside on premises. Ms. Colantino testified that on August 3, 2023, she was working in the office when a female guest ran into the office with her hands on her face. The guest was bleeding so Ms. Colantino called 911.

{¶13} Deputy Barhoover was dispatched to the Edge of Town Motel. Deputy Siminich was already on the scene. When Deputy Barhoover arrived on scene, T.K. was the only civilian in the room. Deputy Barhoover testified that T.K. had "a knot on her forehead, and she had a bloody mouth." (Dkt. 64, T.p. Trial Transcript, p. 94). There appeared to be cuts on her forehead as well. "The room was disheveled. It was out of sorts. There was blood on the sheets. It was kind of confusing and hectic at the time." (Dkt. 64, T.p. Trial Transcript, p. 96). T.K. was "very emotional." Deputy Barhoover testified he took pictures of the scene as well as of the injuries sustained by T.K. T.K. was transported to the hospital for treatment.

{¶14} T.K. testified that she "had a laceration with an L here on my forehead, my nose was bleeding, I have marks around my neck, and a busted lip." T.K. had X-rays which confirmed a broken nose. The laceration on her forehead was cleaned and glued together. T.K. testified she has a permanent scar from the injuries.

{¶15} T.K. identified appellant as her attacker. A warrant was later obtained for appellant's arrest. On cross-examination, T.K. testified that she had told others, identified as Nicole Booth and Trina Barlow, that appellant had pistol whipped her at the motel on August 3, 2023.

4

{¶16} The jury convicted appellant of both counts on April 9, 2024.

{¶17} On May 16, 2024, a sentencing hearing was held. At the sentencing hearing, the State asked the trial court to impose an eight-year prison term on the offense "knowing that the assault charge would merge into and be served at the same time as the felonious assault charge." (Dkt. 66, T.p. Sentencing, p. 10). The trial court did not mention merger of the offenses.[2] The trial court sentenced appellant to an indefinite prison term of a minimum of six years to a maximum of nine years on Count 1 and six months on Count 2. The sentences were ordered to be served concurrently to each other.

{¶18} Appellant timely appeals and raises a single assignment of error for review: "Germaine Clark was prejudiced during trial by the improper comments by the prosecutor referring to material outside the record and indirectly referencing Mr. Clark's lack of testimony in closing argument."

{¶19} "To address allegations of prosecutorial misconduct we 'must determine (1) whether the prosecutor's conduct was improper and (2) if so, whether it prejudicially affected [the defendant's] substantial rights.'" *State v. Light*, 2023-Ohio-1187, ¶ 46 (11th Dist.), quoting *State v. LaMar*, 2002-Ohio-2128, ¶ 121. "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.' " *Id.*, quoting *State v. Garrett*, 2022-Ohio-4218, ¶ 144. "Thus, 'prosecutorial misconduct alone does not require a new trial' and '[t]he conduct of a prosecuting attorney during trial cannot be made a ground of error unless the conduct deprives defendant of a fair trial.'" *Id.,* quoting *State v.*

2. Appellant does not argue merger on appeal; nor was this issue raised in oral argument. Accordingly, we limit our analysis to assignments of error raised by appellant in the briefing.

5

Case No. 2024-A-0048

*Hamad*, 2019-Ohio-2664, ¶ 123. *See also, State v. Apanovitch*, 33 Ohio St.3d 19, 24 (1987).

{¶20} Appellant first argues that the prosecutor improperly referenced text messages which were not admitted into evidence to the prejudice of appellant. We disagree.

{¶21} "[A] prosecutor has wide latitude in closing arguments. As long as an improper comment is isolated and does not deprive the defendant of a fair trial, it will not constitute reversible error. *State v. Davis*, 76 Ohio St.3d 107 (1996). 'The test for prosecutorial misconduct is whether remarks are improper and, if so, whether they prejudicially affected substantial rights of the accused.'" *State v. Bleasdale,* 1996 WL 535283 (11th Dist. September 6, 1996), quoting *State v. Lott*, 51 Ohio St.3d 160, 165 (1990).

{¶22} During closing argument, the State stated: "According to [T.K.], and Deputy saw it, she's getting text messages from him. And showed text messages from him." (Dkt. 65, T.p. Trial Transcript, p. 245). The prosecutor then stated "Watch that video. What'd she do with her phone? Looking, I have text messages of him shooting up my room. That's in that video." (Dkt. 65, T.p. Trial Transcript, p. 245).

{¶23} Appellant alleges that the text messages were not introduced into evidence. While this is true, the prosecutor's comments regarding the text messages did not deprive the defendant of a fair trial as defense counsel opened the door.

{¶24} The text messages were first mentioned during the cross-examination of Deputy Barhoover by defense counsel. Defense counsel inquired: "You also mentioned at some point that there was pictures on a cell phone, correct, of hers? On your body

6

cam? Did you see text messages or pictures on your, on her cell phone?" (Dkt. 64, T.p. Trial Transcript, p. 112). Deputy Barhoover replied: "Correct. She was getting text messages while we were at the hospital." *Id.*

{¶25} On redirect, the State sought to introduce the video of the body cam, presumably to expand on defense counsel's questioning, but the trial court did not allow the video to be played by the State. From the testimony presented when Deputy Barhoover was recalled later by defense counsel, portions of the video were played and admitted as Defense Exhibit 2. Upon review of the recording, T.K. informed officers about the text messages at approximately 3:35 seconds into the video.

{¶26} "[P]arties generally have wide latitude in their closing statements, particularly 'as to what the evidence has shown and what inferences can be drawn from the evidence.'" *State v. Payne*, 2024-Ohio-4698 ¶105 (10th Dist.), quoting *State v. Diar*, 2008-Ohio-6266 at ¶ 213. In *Payne*, the defendant argued similarly that the prosecutor improperly commented on another's suspicions that the defendant was involved in a murder during closing arguments. The Tenth District Court of Appeals declined to find plain error where the defense counsel opened the door by bringing up the allegations first.

{¶27} The appellate court reasoned:

> [U]nless it appears the [S]tate "deliberately attempt[ed] to influence and sway the jury by a recital of matters foreign to the case"—which we find no basis to find in this case— remarks made during closing arguments cannot form the basis of a misconduct claim. See *Maggio v. Cleveland*, 151 Ohio St. 136, 140-41 (1949) (regarding opening statements); *Drake v. Caterpillar Tractor Co.*, 15 Ohio St.3d 346, 347-48 (1984) (applying the holding in *Maggio* to closing arguments). Because the state was commenting on evidence presented at trial and Mr. Payne fails to show plain error when his trial counsel opened the door to the introduction of such evidence,

7

we reject this prosecutorial misconduct claim.

*Payne* at ¶105.

{¶28} Because the State was commenting on evidence presented at trial, evidence which was first presented by defense counsel, appellant's claim of prosecutorial misconduct as to the text messages necessarily fails.

{¶29} Appellant next argues that the State impermissibly implied that the defendant did not testify during closing arguments. We disagree.

{¶30} It is well-settled law that a prosecutor may not comment on a defendant's failure to testify. *State v. Vaughn*, 2019-Ohio-268, ¶ 37 (11th Dist.), citing *Griffin v. California* (380 U.S. 609 (1965) and *State v. Fears*, 86 Ohio St.3d 329, 336 (1999). However, the prosecution is entitled to comment on defendant's failure to offer evidence. *Id.,* citing *State v. Collins*, 89 Ohio St.3d 524, 527 (2000). "The test for prosecutorial misconduct vis-a-vis a defendant's failure to testify is 'whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' *State v. Webb*, 70 Ohio St.3d 325, 328 (1994), quoting *Knowles v. United States*, 224 F.2d 168, 170 (10th Cir.1955)." *Vaughn at ¶ 37.

{¶31} In closing argument, the State made the following statement: "You might hear the words well this is a he-said she-said. Actually it's a she-said, because that's the evidence before you. What she said. So when you deliberate you've got to realize that, what the evidence is." (Dkt 65, p. 231). This mimicked what the defense counsel stated in opening statements: "Now the only two people that were there and know what happened is my client the Defendant and the victim, supposedly [T.K.]. Nobody else was

8

actually there, nobody else saw. * * * As I said, it's a he-said she said." (Dkt. 64, T.p. Trial Transcript, p. 89).

{¶32}   Defense counsel, in their closing argument reiterated this sentiment: "I also said in the beginning that this was a case, two people there. Two people, the Defendant and T.K." (Dkt. 65, T.p. Trial Transcript, p. 233).

{¶33}   In final summation, the State similarly argued: "[t]here were only two people there. And you've heard from Ms. Kline." (Dkt. 65, T.p. Trial Transcript, p. 246).

{¶34}   Defense counsel moved for a mistrial due to the prosecutor's remarks. The trial court denied the motion but repeated the following jury instruction: "It is not necessary that the Defendant take the witness stand in his own defense. He has a Constitutional right not to testify. The fact that the Defendant did not testify must not be considered for any purpose." (Dkt. 65, T.p. Trial Transcript, p. 257).

{¶35}   Herein, the prosecutor was commenting on the evidence the jury had before it and the language used was not "manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." (Emphasis deleted.) *Webb*, 70 Ohio St.3d at 328 (1994) quoting *Knowles v. United States*, 224 F.2d at 170.

{¶36}   Further, "the decision whether to grant or deny a motion for a mistrial * * * rests within the sound discretion of the trial court." *State v. O'Neil*, 2024-Ohio-512, ¶ 48. Because the prosecutor's comments did not rise to the level of misconduct, we conclude that the trial court did not abuse its discretion when it denied appellant's motion for a mistrial.

{¶37}   As such, appellant's assignment of error is without merit.

9

Case No. 2024-A-0048

{¶38} For the reasons set forth above, we affirm the judgment of the Ashtabula County Court of Common Pleas.

EUGENE A. LUCCI, P.J.,

MATT LYNCH, J.,

concur.

10